I'm Allison Mendel for the defendant Malcom Brooks. I'm going to attempt to take only eight minutes for my part of the argument, leaving two for rebuttal, and leaving the other half for counsel or the co-defendant. I think I need to start here with the issue of plain error because it is not really helpfully treated in the briefs, I think. Plain error comes into question on the sentencing issues, and I think actually the answer is very simple because plain error requires an error that is plain that affects substantial rights, and when the judge gives his little colloquy about whether Brooks has a right to appeal, I think it's very clear that the judge thinks that the sentencing issues have a substantial effect on his sentence, and therefore an error in analyzing the sentencing issues does affect his substantial rights, and I think that that's very clear from the record. Judge O'Connor Could I ask you about the appeal waiver? We have this case, Arias Espinoza, which where the court said to the defendant, you may have a right to appeal, and based on the may, he said, well, that wasn't enough to cancel the prior waiver. So when I read the court's statement in this case, it seemed certainly to have as much equivocal type language, even at the end of his little statement, he says, so anyway, there was appeal waiver. I've now informed him of that. He may come to a different conclusion, and you know, I'm sure you can talk to him about that as well. So why isn't the district court's equivocal statement on that point mean that the appeal waiver remains in effect? Judge O'Connor Well, Your Honor, I think if you read the whole range of cases, starting with Buchanan and the other cases, it's clearly a range, and this court has to make value judgment about where the line is. And I think in this case, that it's clearly, I mean, it's not as crystal clear as it was in Buchanan, but I don't think it's as ambiguous as any of the other cases where this court has found that the appeal waiver stands. The judge's statement about Mr. Brooks' right to appeal was far more specific than Arias other ones. He specifically talks about the effect of the safety fell decisions, and that he ought to be able to appeal those. It isn't the same sort of statement in the other cases where the judge says... Judge Fischer There's a lot of cases that says that the appeal waivers don't apply, which I guess you haven't invoked, but don't apply when you have an illegal sentence, right? Judge O'Connor Correct. Judge Fischer And I'm not sure what a legal sentence means, but here we have a sentence that was apparently imposed mandatorily, but on erroneous grounds. Judge O'Connor I think that's correct. Judge Fischer It's your argument. Judge O'Connor Yes. Judge Fischer So, I mean, why wasn't he saying that, essentially? I mean, why don't those two things tie together? I mean, what he's basically saying is, if I'm wrong, then the whole sentence is just wrong. Judge O'Connor Well, that certainly is one way to interpret what the judge was saying, and therefore there would be no waiver of the appeal on that ground. I mean, I think that that's consistent with Judge Kaczynski's concurrence in, what was it, Schuman, about the difficult situation that the district court is in, trying to explain the So, I don't know what he meant, but he might have meant that, or he might have been telling Mr. Brooks he had a right to appeal, even though there was an appeal. Judge Kaczynski I thought the judge was just stating his understanding that this was included in what was reserved for appeal. Judge O'Connor That might very well be, Your Honor. Judge Kaczynski Since he has a right to appeal the legality if his sentence is outside the bounds of the agreement, and since this, if he is wrong about this, this would put it outside the bounds of the agreement, the district judge's understanding that this is appealable. Judge O'Connor That may have been what the judge was saying, Your Honor. It's a little bit difficult. Judge Kaczynski So, let's say that's what he's saying. Judge O'Connor Yes. Judge Kaczynski What does that do on appeal? Judge O'Connor I think... Judge Kaczynski I mean, it's not a vitiation of the waiver. It is the judge's interpretation of the waiver, and does that mean that since that would have been, since this was the district judge's interpretation of the waiver, that was a reasonable way the defendant could have interpreted it, and that we therefore should interpret it that way. Isn't that what you were saying? And review the safety valve decision on the merits, yes. I think that you get there either way. Certainly, Mr. Brooks was left... Judge Kaczynski It's a much easier way for you. Judge O'Connor Well, I guess that's right, Your Honor. It is. And certainly... Judge Kaczynski You can ride on the coattails of Mr. Judge. Judge O'Connor Is there a case that says that? I mean, all the cases I saw seem to suggest that unless the court is pretty clear, then it's not the appeal waiver remains in place. What case are you relying on? Judge Kaczynski Well, no, no, I think those are two different issues, because the appeal waiver only applies to appeals that you can waive, and not to appeals that you can't waive. Judge Kaczynski Well, it's not a question of can't, the point is that you didn't waive. Judge O'Connor Right, that you don't in the ordinary course appeal. You don't waive your right to appeal an illegal sentence. Judge Kaczynski And so what's an illegal sentence? Any time a district court makes an error, does that make the sentence illegal, in your view? Judge O'Connor No, I don't think it's that broad. Judge Kaczynski Oh, really? So what is it? What makes it illegal? Judge O'Connor Well, in this case, it would be applying the wrong standard to the safety valve. Judge Kaczynski It's essentially applying a mandatory sentence when it shouldn't have been met. Judge O'Connor Correct. Judge Kaczynski So is there a case that says that class is illegal and other errors are not? Or what are you relying on? Judge O'Connor Yes, there are. And I can't bring the citation to mind, but absolutely, that is my understanding of the law. Judge Kaczynski What makes it illegal? Could you just sort of in general to characterize what is it that makes a sentence illegal and not just an error? Judge O'Connor This sentence would be illegal because he was sentenced to a mandatory minimum sentence when he shouldn't have had a mandatory minimum. Judge Kaczynski And what makes that illegal? Because I'm not understanding the difference. Judge O'Connor It wasn't illegal in the sense that it was an authorized sentence within his maximum, and he could have been sentenced to. Judge Kaczynski Yes, he could have. Judge O'Connor But not mandatorily. Judge Kaczynski Correct. Judge Kaczynski Yes, the judge could have said, I think he's a bad guy. He needs a 60-month sentence. But that isn't what the judge said. The judge said, he's not a bad guy. And in fact, the whole colloquy at the chain to plea where they said, we're going to leave him out of jail, you know, he's not that bad a guy. And so the judge clearly is stating that he would have sentenced him to a shorter sentence if he'd had that choice, but he had to impose a mandatory minimum. Everybody at the sentencing sort of says the same thing. Judge O'Connor So are you saying there's an error in interpreting the statute, and that makes it illegal? Judge Kaczynski In applying the statute. Judge O'Connor So if we said that the district court had not made an error, then the appeal waiver would be in effect. Is that your view? Judge Kaczynski Well, I guess it's kind of circular, because once you review on the merits, whether the sentence is an error or not, then we really had our review that we would have been entitled to. Judge O'Connor So are you saying that if a defendant has an argument that the district court's interpretation of a statute is erroneous, then the appeal waiver, as long as he frames his argument that way, then the appeal waiver is not in effect? Judge Kaczynski I think that's generally correct, yes. And that doesn't apply to discretionary applications of sentence enhancements and that sort of thing. That doesn't make a sentence illegal. Judge Kaczynski I think you need the point that this pushes it into a mandatory minimum. Judge O'Connor Yes. Judge Kaczynski So that's what makes it illegal, not just that the district court made a mistake. Judge O'Connor If it was a guidelines mistake. Judge Kaczynski Right. No, no. If it was a guidelines mistake, it would not be an illegal sentence. Judge O'Connor So why is that? So if the district court misinterpreted the guidelines and imposed a enhancement that was wrong because of a misinterpretation, you're saying that would not be an illegal sentence? Judge Kaczynski Well, I guess it depends on what the error was in applying the guidelines. I think it's possible that there is a guidelines error out there that would be an illegal sentence. Judge O'Connor I guess I'm still not understanding how to differentiate. Judge Kaczynski Well, I think that you have to look at it on a case-by-case basis and say what kind of, what kind of error. Judge O'Connor The clause is pretty murky, I think. Judge Kaczynski It is very murky. Judge O'Connor And at this point exactly isn't really briefed. Judge Kaczynski That is correct, Your Honor. That's right. Judge O'Connor For the moment, let's assume that we get by the appeal waiver. The government's view is that the firearm's standard was wrong, but it's harmless. But I think their position is also that even if it's not harmless, the other ground would have been sufficient to deny him. Judge Kaczynski Yeah, I think that, I think the factual record on the firearm is much stronger, and I do think that the argument is in the briefs that Mr. Brooks could rely on a remand to explain it again to the district court. But the full disclosure, I think, is a lot murkier. And I think it's clear that the court looked at the full disclosure incorrectly under Mejia-Pimentel, that the court seemed to believe that the fact that disqualifies him, and that the fact that he told what the court thought was the true story first, and the other story second. Judge Kaczynski I thought the judge just said, look, he hasn't complained, and he told it through different stories. Judge O'Connor But this court's cases are very clear that it's the last story that counts. Judge Kaczynski If you believe the last story. Judge O'Connor Correct. Judge Kaczynski I think what the judge was saying is, look, you know, we don't know what the truth is here. Judge O'Connor I thought our case, well, there's a case called Chestra. Have you looked at that? I thought that it's the closest one to this one. And it seems to say it isn't necessarily the last story. It's as long as he has one true story. Judge Kaczynski Well, that Judge O'Connor Which is what your situation is. Judge Kaczynski That is true. Well, it's also his last story. In this case, one true story, I guess it depends on what the dispute is over. Either one is correct. You just have to come forth once with the whole story. And what I think Judge O'Connor Even if you then lie a trial. Is that exactly what happened in Chestra? Judge Kaczynski Yes. Judge O'Connor I mean, it's a strange rule, but it seems to be the rule. Judge Kaczynski It does. Judge Kaczynski And this case, Judge Kaczynski But how do we know? How does the judge know whether there is one true story? There could have been two false stories, right? And he's saying, I don't know. The guy hasn't come clean. He gives two different stories. I can't tell that he's come clean. It's his burden. It's his burden. And he hasn't met her. Why isn't that what's going on here? Judge Kaczynski Well, because I don't think that's what the judge says. I think the judge gets to do that. I think the judge gets to look. Mr. Brooks' story here is that I told the whole story at trial. That's clearly what his attorney says at sentencing. That is the whole story. I said it all at trial. I was cross-examined. That's the truth. Then I think the judge is permitted to look at that and say, just taking that series of statements, does that fulfill the safety valve requirement? I don't think the judge looked at it that way, just like he didn't look at the gun under the safety valve standard. I think that the judge was saying, I look at all of his statements together to see whether the totality is truthful. And that clearly is not what this claim is about. I thought he said even more distinctly that because he lied at trial, that's the end of it. Judge Kaczynski Well, yes. But he gets there by saying he told a different story earlier than he told a different story at trial. Therefore, he can't get it.  LIEBERMAN Yes, I've used way more than my time. Thank you, Your Honor. MS. DARLA MONDU Good morning, Your Honors. Darla Mondu for Attorney Corey Gresham, who is a co-defendant of Mr. Brooks. And Your Honor, I just heard a very important fact, which was that at Mr. Brooks's sentencing, he averred that he told the whole truth at Corey Gresham's trial, which at that trial, he testified for the defense saying that the whole entire marijuana grow was mine. Mr. Gresham was merely a visitor here from Georgia. But the jury didn't believe it and the judge doesn't believe it. So what's the problem? MS. DARLA MONDU They didn't believe it because the statement that he inculcated himself at the interrogation with TFO Carson came in. So what reasonable jury would listen to a co-defendant taking the responsibility for all of it? Honestly, he said he told the truth. And then faced with a statement coming in from the investigator. So is your argument it shouldn't have come in? MS. DARLA MONDU I'm sorry? MS. NIEUSMA So what is your argument? That the earlier statement shouldn't have come in? MS. DARLA MONDU That the motion to suppress the statement was clear error, the denial of the motion to suppress. And because that is mostly a credibility determination, which the magistrate judge and the district judge both believe the officers, we have to look at a little bit of other evidence, testimony that came in that disputes whether Corey said it or not. And that entails when was Miranda given? Do you believe, Carson, that he gave it at the inception of the interview? MR. CARSON It's not us, right? I mean, this is why we have district judges. That's why we're not there. So we have a factual finding. What do we do with that? The judge said it was given. You know, the officer said I forgot at the outset that the FBI prefers a written waiver. And I don't remember the end. So I got him to sign the card then, but I gave him the warning at the beginning. Judge believed it. How do we go behind that? Because the judge is, there's a presumption against the waiver. So you got to look. MR. LEVIN But here we have a finding. You know, presumptions are there until there's a finding. Once there's a finding, there's a finding. What do you do with the finding? MRS. MOSS You appeal it on clear error that that finding was in error based on the fact that his, um, because there was no corroboration that he gave it in the beginning. Trooper Ingram was there. MR. LEVIN Well, you don't need corroboration. Why do you need corroboration? MRS. MOSS Well. MR. LEVIN You have a witness. A witness testifies. The judge believes the witness. Isn't that how things work? I can't imagine what else you want. MRS. MOSS Well, when you're starting with the foundation, there's a presumption against the waiver. MR. LEVIN There's a presumption. And the judge then finds the witness telling the truth. That overcomes presumption. So what, what, so what? MRS. MOSS Because there was no corroboration of that. MR. LEVIN You say, you say that. But where is the requirement of corroboration? Is there some rule that says if there's a presumption, you need corroboration? I've never heard of it. MRS. MOSS No, Your Honor. I'd like to move on to the search warrant, if I may. MR. LEVIN Okay. MRS. MOSS That was a clear error, too. MRS. MOSS But you have the same problem again. I mean, they said they smelled it. And you're saying they didn't. And they shouldn't have believed them. MRS. MOSS Well, what I'm saying is they omitted from the search warrant that Tupper Ingan testified that on four or five occasions, he detected no odor whatsoever. MR. LEVIN So what? I mean, the fact that you detect odor once, that's enough. That tells you there's marijuana in there. The fact that the wind is blowing in a different direction, or, you know, you can't smell it every time. MRS. MOSS But he didn't report that to the magistrate judge. MR. LEVIN Why would he? MRS. MOSS Because it is material. MR. LEVIN He didn't report that the sky is blue? MRS. MOSS It's material to her decision on whether there needed to be more. He got five times he didn't smell anything, Tupper Ingram. We have one time that Tupper Young didn't. MR. LEVIN Well, let's say somebody's on a state car that says, I watched that corner for five days, nothing happened. And then one time I saw the defendant and, you know, another person sitting there exchanging money and a package. Why is it relevant that for five days nothing happened in that corner? Lots of stuff doesn't happen in an investigation. You know, that's how we have people watching and investigating until they find it. But the fact is that you smell it once, the smell doesn't come from nowhere. And in this case, twice, right? MRS. MOSS Tupper Ingram once, Tupper Young once. MR. LEVIN Okay, so that's twice. MRS. MOSS Six times, no. Anyway, Your Honor, moving on to... MR. LEVIN I mean, it's not like a police dog where you say, well, this police dog is reliable and then he has five false negatives. They just said, well, several times we didn't smell it, lots of stuff doesn't happen. MRS. MOSS Tupper Well, then there also was the inclusion of the unknown confidential informant, undocumented confidential informant who said that Mr. Gresham had been selling drugs in Anchorage. That came, that was part of his affidavit. That certainly should not have been included in there. It wasn't, it wasn't a reliable. All it did was bolster their case. And I draw your, Your Honor's attention... MRS. LEVIN I don't even remember this argument. Was this argument made in the briefs? MRS. MOSS Tupper I'm sorry? MRS. LEVIN What, I don't remember this argument, this last one that you're just mentioning now. MRS. MOSS Tupper I don't believe that... MRS. LEVIN You raised it in your brief, you did. MRS. MOSS Tupper I don't believe the trial counsel specifically argued about that, no. MRS. LEVIN I don't think you argued about it either, so let's forget about it. MRS. MOSS Tupper One issue that has had a little bit of activity lately is the statute, I don't know how to pronounce the case, is it Elaine? The United States Supreme Court case that says the drug quantity has to be lodged in the indictment. Well, in Mr. Gresham's case, yes it was, it said more than 100 plants, but trial counsel did argue at sentencing that even though the jury's verdict came back with 100 plants, the sentencing guidelines to find a plant with a root ball and the government did not meet its burden of proving beyond a reasonable doubt... MRS. LEVIN But the jury was finding it with regard to a mandatory minimum, right? MRS. MOSS Tupper Yes. MRS. LEVIN And that's the provision that applies with regard to the mandatory minimum, which doesn't have this definition. MRS. MOSS Tupper It does not, no. MRS. LEVIN All right, so what's the problem? MRS. MOSS Tupper Well, because at sentencing, the judge requested briefing on the root ball issue. The government didn't... MRS. LEVIN I know, but I'm wondering what its relevance was. If the jury found it and the jury's finding was itself sufficient to compel a mandatory minimum, what did the rest of it matter for? MRS. MOSS Tupper Because, Your Honors, it makes the dichotomy of, like in Robinson, where the defendant pled, he was given the benefit of counting root balls. In a jury finding, in new cases now when the government alleges the quantity, like they did in this case, the 100 plants, there's still going to be the dichotomy between what the sentencing guidelines define a plant to be for sentencing, which they're advisory, but they still are applicable, and the defendant who gets sentenced for 100 plants that aren't defined with root balls. MRS. LEVIN And so? MRS. MOSS Tupper Well, that totally is something that's going to be even, not only is it important in this case, because counsel argued there was only 46 root balls, it is, it makes it that either the statute's going to have to give and... MRS. LEVIN More likely, I mean, the statute's the statute, so the guidelines provision is there for a different reason, right? MRS. MOSS Tupper It's there for the defendant who pleads to quantity, because if that defendant's quantity is 100, then he gets the mandatory minimum. If his quantity is 50, he gets to be sentenced under the amount of plants that had root balls. MR. RAUMENBERG Thank you. MS. FARRINGTON May it please the Court, I'm Joanne Farrington, appearing for the government in Mr. Brooks' appeal. MR. RAUMENBERG Anything you heard this morning wasn't adequately covered in your brief? MS. FARRINGTON I believe it was, with a couple of points that I'd like to make in response to... MR. RAUMENBERG Yes, it is. MS. FARRINGTON The answer is yes. With the exception of a couple of points that I'd like to answer in response to questions that were raised by the Court. First of all, an error doesn't make a sentence illegal. Because this wasn't briefed, I don't have a citation for the Court, although I'd be happy to provide one, but in general, an illegal sentence is one that exceeds a statutory range. MS. FARRINGTON But this is kind of like an Alain problem. It didn't exceed the statutory range, but it turned something into a mandatory minimum that wasn't one, arguably. MS. RAUMENBERG It did, but that's not an unusual thing. The judge makes all sorts of rulings in the course of sentencing a defendant. And if the defendant has waived his right to appeal those rulings, the fact that the judge... MS. FARRINGTON But he's not usually making them about statutes. He's usually making them about guidelines, and the consequence isn't to make something a mandatory minimum that isn't... It's not to express his discretion, but to eliminate his discretion. MS. RAUMENBERG As I said, this is not an issue that was raised by the defendant on appeal. MS. FARRINGTON But that seemed to be what the judge was essentially saying. I mean, that's what was bothering him. MS. RAUMENBERG I believe it's completely unclear what the judge was saying, frankly. It's not clear whether he was saying, I think he has a right to appeal this issue, or maybe he has a right to appeal when the government can disagree. MS. FARRINGTON He wasn't saying maybe. MS. RAUMENBERG He was saying, it seems to me, which I think is an equivocal statement on its face. MS. FARRINGTON What's equivocal about it? It seems to him. It's his interpretation of the situation. MS. RAUMENBERG That is equivocal. MR. STEINER And he talks about the Ninth Circuit disagreeing with his rulings, which can only happen if there is an appeal. MS. RAUMENBERG We don't usually disagree in the abstract. MS. FARRINGTON Within the same breath, practically, he also twice tells the defendant that he has waived his right to appeal. MS. RAUMENBERG He says there was an appeal waiver. He doesn't say you have waived your right to appeal. He said there was an appeal waiver, but I think that the Ninth Circuit would find that you could appeal this. And that, I think, is equivocal. That's expressing his opinion, his thought, that maybe there is a right to appeal. MS. RAUMENBERG He's just making a statement, a factual statement. In the plea agreement, there is a plea waiver, an appeal waiver. MS. RAUMENBERG Just for clarification, there's one question as to whether what the district court said was enough to initiate the appeal waiver. Does that matter at all if the defendant had argued that the sentence was illegal? Does it matter whether the district court said anything or not? MS. FARRINGTON In other words, is there a per se rule? Again, this issue, so far as I know, was not briefed. But is there a per se rule that a defendant can always appeal an illegal sentence regardless of an appeal waiver? MS. RAUMENBERG Again, I do not have the case of that. But my understanding is that that is one of the exceptions. MS. FARRINGTON Okay. So it doesn't really matter if... MS. RAUMENBERG If this was an illegal sentence... MS. FARRINGTON Right. Then it wouldn't matter what the district court said. MS. RAUMENBERG You can't waive your right not to receive an illegal sentence. MS. FARRINGTON Okay. MS. RAUMENBERG This, however, was a legal sentence. It was within the statutory range. In fact, Judge Kosinski, you suggested that perhaps it violated the plea agreement. But the plea agreement, in fact, said that it was a range up to 40 years with a five-year mandatory minimum. That's at page 32 of the extradirectory. So not only was it within the statutory range, but he was expressly on notice in his plea agreement that that was going to be the potential sentence. Beyond that, unless there are other questions... MS. FARRINGTON But only if a safety foul doesn't apply. MS. RAUMENBERG You'd like me to address... I mean, clearly in the plea agreement, it couldn't have said you're going to get a mandatory minimum even if the safety valve applies. It didn't say that. MS. FARRINGTON The safety valve question isn't addressed in the plea agreement. The range of sentences to which Mr. Brooks was exposed was. MS. RAUMENBERG Well, I would like to know whether, let's assume we get beyond the waiver, why... Do you know the Chester opinion or whoever says that? MS. FARRINGTON Yes, I have read that. MS. RAUMENBERG Why isn't it controlling on the question of the proffer? MS. FARRINGTON Well, I think that the basic standard under the... MS. RAUMENBERG Controlling, at least to the degree that the judge applied the wrong standard and it ought to go back for him to decide essentially whether he ever told the truth at either stage. MS. FARRINGTON I think that what the judge said is, you didn't tell the truth, you lied. MS. RAUMENBERG Yes, but only at the trial. He kept saying, at the trial you lied, right? MS. FARRINGTON That's right. MS. RAUMENBERG And he never considered whether he had told the truth earlier. MS. FARRINGTON Which is the only statement that Mr. Brooks relied on. At sentencing, he said, I told the truth at trial and therefore I told the truth to the jury before sentencing and therefore I'm entitled to the safety valve. He never suggested, in fact, he expressly rejected any argument that he had told the truth earlier than that. I don't think it was up to the court to speculate that, well, maybe he was telling the truth before, but maybe not, maybe he had told part of the truth, maybe not. It's up to the defendant to make that argument. It's his burden to persuade the judge that he's entitled to the safety valve. MS. RAUMENBERG So your position then would be that the fire, the whole firearms thing doesn't matter? MS. FARRINGTON Exactly. The whole firearms thing does not matter. Either one, either of the two, either his failure to provide the government with a full and truthful statement about his role in the offense before sentencing or his constructive possession of the gun would defeat the safety valve. MR. RAUMENBERG Okay. Thank you. MS. FARRINGTON Thank you. MR. FARRINGTON May please the court. Kyle French from the United States with regard to the Gresham matter. MR. RAUMENBERG And you heard that it was not adequately covered in your brief? MR. FARRINGTON Yes, your question, Your Honor. Your question was about the officer forgetting to initially give the Miranda rights in terms of the written document and getting a signature on a document. One thing that everybody...  RAUMENBERG You don't think that was covered in your brief? MR. FARRINGTON It was covered, but an aspect wasn't, Your Honor. And that's the officer works for the Anchorage Police Department, and they have a policy to record all interviews. So that explains why he would have forgotten in this case. MS. RAUMENBERG The only thing that I'd like to know a little bit about is the business about the 100 plants. Is the guideline in the statute inconsistent with each other? I mean, is your position that with regard to the 100 plants for the mandatory minimum, they don't have to have root balls? They can just be what? I mean, how do you know if it's a plant? MR. RAUMENBERG Well, the jury... The statute doesn't define what a plant is. MS. RAUMENBERG Okay. MR. RAUMENBERG And the jury is left with the common knowledge that's provided to it from day-to-day experience, as well as, for example, in this case, an expert identifying that this was marijuana, pictures provided to them identifying marijuana. MS. RAUMENBERG What we know is marijuana. The question is whether there were 100 plants. MR. RAUMENBERG Marijuana plants specifically.  They are not a different kind of plant. MS. RAUMENBERG Can somebody testify that there were 100 of them? MR. RAUMENBERG There was testimony specifically about root balls. Officer Carson on direct was asked about how he counted the particular number of plants in this case. Officer Carson said, well, it's different in the federal, the state system. And on the site, we were reminded, myself being a state person, that we have to separate and count the root balls because in a state system, we go by weight, not root balls. So we did that in this case. Well, how many were there, Mr. Carson? Right on the property and evidence form, there's a separate entry that says 190 plants. That is separate from other entries that talk about marijuana and talk about other types of marijuana plants and being located in other locations. They made a specific entry for that count of 190, and that reflects how many root balls were actually there. MS. RAUMENBERG When I looked at the transcript, in addition to having extensive testimony about root balls, there were also currently photographs of plants with root balls. That wasn't really brief. I didn't see that in the brief. Was there some question about all of that evidence and testimony? MR. RAUMENBERG In terms of admissibility, no, Your Honor. There weren't, I can't recall, but there's over 300 exhibits in this particular case. There's a large number of pictures of plants in various stages of formation. Whether the pictures depicted every single one of the 190, I don't know. One critical factor in this case, though, for the court is the jury, in fact, made two special verdicts, one for manufacturer and one for conspiracy with intent to manufacture over many months, from April 2010 to November 30, 2010. The law enforcement could have went into that house and not found a single plant, and we still could have convicted Mr. Gresham for conspiracy of intent to possess and manufacture, distribute marijuana of 100 or more plants. So, for example, say that you have a situation where the marijuana grow has just stripped out all their plants, set them up for resale. They don't have anything currently growing, but they have a warehouse, 3,000 square feet with tons of little pots, tons of equipment, tons of supplies, records of how many they produced over time, of watering, such as in this case. A jury could hear all that evidence and say, yeah, between April and November, we find beyond a reasonable doubt that there was 100 or more plants. So you have a special verdict not just with the manufacturing and how many plants are physically present, but you also have a finding with regard to 100 or more plants with regard to the conspiracy. So that makes this particular issue easy for the court in terms of identification of the number of plants, because it includes more than just the plants that were present for purposes of the conspiracy finding. Okay, thank you. You may take a minute for rebuttal if you wish. Your Honor, I think we both addressed all of your questions. That answer didn't answer the question about the difference between the statute and the sentencing guidelines. And it obviously concerned the district court because he asked for a briefing on it. And the United States said they weren't going to present an expert to show how many root balls. The testimony at trial does not show 190 plants with root balls. Some were, there were cuttings, there were babies, there were, the total number that trial counsel counted was 46, Your Honors. And I submit on that. Okay, thank you. Okay, Your Honor, I yield the testimony. Okay, Your Honor, next in Native Village of Point Hope. This is EPA.
judges: Kozinski, Berzon, Ikuta